O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DB VENTURES LIMITED,<br><br>                    Plaintiff,<br><br>     v.<br><br>F45 TRAINING HOLDINGS INC.,<br><br>                    Defendant. | Case No.: 2:23-cv-03460-MEMF (RAOx)<br><br>**ORDER DENYING DEFENDANT F45 TRAINING HOLDINGS INC.'S MOTION TO DISMISS AND GRANTING IN PART REQUEST FOR JUDICIAL NOTICE [ECF NOS. 16, 17]** |

Before the Court is the Motion to Dismiss and Request for Judicial Notice filed by Defendant F45 Training Holdings Inc. For the reasons stated herein, the Court hereby **GRANTS IN PART** the Request for Judicial Notice, and **DENIES** the Motion to Dismiss.

/ / /

/ / /

/ / /

I. **Background**

A. **Factual Background**[1]

Plaintiffs DB Ventures Limited ("DBVL") is a company that controls the publicity rights to David Beckham, a renowned professional soccer player. Compl. ¶ 6. On November 24, 2020, DBVL entered into a promotional agreement (the "Agreement") with Defendant F45 Training Holdings Inc. ("F45"), a global fitness franchisor. *Id.* ¶¶ 7, 15. Through this Agreement, DBVL agreed to provide marketing and promotional services for F45 through Beckham, for a period of five years from December 5, 2020 to December 5, 2025, in exchange for conveyance of certain equity interests and cash payments to DBVL. *Id.* ¶¶ 16, 18.

Under the Agreement, F45 agreed to pay DBVL fees totaling $1.5 million annually for the duration of its five-year term. *Id.* ¶ 19, Exh. A at 3.1, 3.2, 3.3, 3.4. Additionally, F45 agreed that in the event it became publicly traded within a year of the effective date of the Agreement, it would "issue" DBVL, "on the six-month anniversary of the date [F45 became publicly traded] (the "First Vesting Date") such number of shares of the Company's Common Stock as is equal to the higher of: (I) the number of shares that would [] be equal to 1.0% of the enlarged total number of shares of the Company's issued and outstanding Common Stock at that time; and (II) $5,000,000 divided by the First Vesting Date Share Price." *Id.*, Exh. A at 3.6(a). F45 also agreed to issue such shares on the 12-month anniversary of the date it became publicly traded (the "Second Vesting Date"). *Id.*, Exh. A at 3.6(b). According to the Agreement, F45 "shall procure that any shares of Common Stock issued to [DBVL] pursuant [sic] this Agreement are admitted to trading on any relevant securities exchange from the time of their issuance to [DBVL] and shall be freely transferable by [DBVL] without the approval of [F45] or any other person from the time of their issuance." *Id.*, Exh. A at 3.6(f). Either party was permitted to terminate the Agreement due to a material breach by the other party that remained uncured for 30 days after written notice thereof. *Id.* ¶ 22, Exh. A at 7(b), 8(b), 8(f). In the

---

[1] Unless otherwise indicated, the following factual background is derived from Plaintiffs' Amended Complaint. ECF No. 1-42 ("Compl."). For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they *are* true.

event of a termination due to F45's material breach, the parties agreed that DBVL would continue to receive all cash and equity compensation due to it for the remainder of the five-year term. *Id.* 23, Exh. A at 3.5, 3.6(d), 7(b).

DBVL fulfilled its obligations to the Agreement in making Beckham available for marketing and promotion. *Id.* ¶¶ 24, 26, 28, 29. On July 15, 2021, F45 went public on the New York Stock Exchange with a valuation of $1.4 billion. *Id.* ¶ 25. On January 15, 2022, on the First Vesting Date, F45 "purported" to have issued shares to DBVL, but they were not transferable or tradeable. *Id.* ¶ 30. However, F45 did issue registered and freely tradeable stock to other entities. *Id.* ¶ 31. On May 20, 2022, DBVL sent written notice to F45 that the shares were not issued in the manner required by the Agreement. *Id.* ¶ 32, Exh. B. DBVL terminated the Agreement effective July 5, 2022, because F45 did not make the issued shares freely transferable or tradeable. *Id.* ¶ 34, Exh. C. DBVL was not free to liquidate the shares issued by F45 until September 23, 2022. *Id.* ¶ 35. F45 did not issue any shares on the Second Vesting Date, and did not make any further payments to DBVL. *Id.* ¶¶ 37, 40.

### B. Procedural History

On October 19, 2022, DBVL brought suit in California state court alleging breach of contract and declaratory relief claims against F45. ECF No. 1-2 ("Original Complaint"). In the Original Complaint, Plaintiff ABG-Shark, LLC ("ABG") also brought similar claims against F45. *Id*.

On December 8, 2022, F45 demurred to the Original Complaint based on misjoinder of parties and failure to state a claim. ECF No. 1-21 ("Demurrer"). On March 17, 2023, the State Court issued an order on the Demurrer, sustaining it with regards to the misjoinder but overruling the rest of the Demurrer. ECF No. 1-40 ("Demurrer Order").[2] Following the Demurrer Order, DBVL filed the Amended Complaint (the operative Complaint in this case) on April 5, 2023, removing ABG as a plaintiff as well as ABG's cause of action. Compl. After the severance of ABG from the proceeding, F45 removed the case to federal court on May 5, 2023. ECF No. 1 ("Notice of Removal").

---

[2] It appears to the Court that there is a typographical in the Demurrer Order on page 1, as although it states at first that the Demurrer was "otherwise sustained," the State Court in substance overruled the Demurrer other than as to the misjoinder argument related to ABG. *See id.*

3

On May 12, 2023, F45 filed this Motion to Dismiss (the "Motion") and Request for Judicial Notice ("RJN"). ECF Nos. 16, 17. On June 9, 2023, DBVL filed an opposition to both the Motion and the RJN. ECF Nos. 24, 25. On June 30, 2023, F45 filed a reply in support of the Motion and the RJN. ECF No. 30, 31. On September 7, 2023, the Court held a hearing on the Motion.

## REQUESTS FOR JUDICIAL NOTICE (ECF NO. 17)

### I. Applicable Law

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). A court considering a motion to dismiss should not take judicial notice of material that cannot be considered for the motion. *See Lee*, 250 F.3d at 689.

### II. Discussion

F45 requests judicial notice of: (1) a May 23, 2022 letter from F45 to DBVL; (2) a June 17, 2022 letter from DBVL to F45; (3) a June 19, 2022 letter from F45 to DBVL; (4) a printout of an SEC webpage; (5) the transcript hearing from the February 24, 2023 hearing on the Demurrer (collectively, the "Exhibits"). DBVL objects specifically to notice of the SEC web page but does not otherwise contest the authenticity of the Exhibits. ECF No. 25 ("RJN Opp.").

1    This Court will judicially notice the correspondence between F45 and DBVL (Exhibits 1-3) because the Complaint refers to these communications. Compl. ¶ 33 (discussing "the parties' ensuing correspondence" after May 20, 2022). However, the Court declines to judicially notice Exhibits 4-5 as the Complaint does not refer to them nor are they central to DBVL's claims. *See Corinthian Colleges*, 655 F.3d at 999.

## MOTION TO DISMISS (ECF NO. 16)

### I. Applicable Law

F45 brings its Motion pursuant to Federal Rules of Civil Procedure 12(b)(6). Rule 12(b)(6) allows a party to seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Labels, conclusions, and "formulaic recitation of a cause of action's elements" are insufficient. *Twombly*, 550 U.S. at 545.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

/ / /

/ / /

## II.  Discussion

The Court gives deference to the State Court's Demurrer Order, which already rejected the arguments F45 makes in its Motion, and accordingly denies F45's Motion.

### A. The Court Finds No Reason to Depart from the State Court Ruling

The Supreme Court has instructed that after a case is removed, "the federal court 'takes the case up where the State court left it off.'" *Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 437 (1974). The Ninth Circuit has also advised that "generally one judge should not overrule the prior decisions of another sitting in the same case because of the 'principles of comity and uniformity [which] . . . preserve the orderly functioning of the judicial process." *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 530 (9th Cir. 2000). The Court sees no reason to depart from these settled principles in this case, as F45 merely raises the same substantive arguments as it did on its Demurrer. *See* Demurrer at 3 (arguing that DBVL failed to state a claim for breach of contract because (1) "F45's obligation to issue shares to DBVL must be interpreted as a distinct act from its obligation then to make those shares freely transferable through SEC registration," (2) the term "procure" "reflects the parties intention that F45 would only be required to begin the process of registering shares from the time of their issuance," and (3) "DBVL's proffered interpreration of Section 3.6(f) would require F45 to violate federal securities law"). F45's Demurrer was fully briefed and heard by the State Court, who carefully examined the arguments raised and issued an ensuing 12-page opinion. *See* Demurrer Order.

F45 relies on *Preaseau v. Prudential Ins. Co. of America*, which held that a "federal court, within its discretion and for 'cogent' reasons, could grant summary judgment notwithstanding [] earlier denial by the state court." 591 F.2d 74, 80 (9th Cir. 1979). But, F45 raises no persuasive reasons here why this Court should reconsider the prior ruling. There is no substantial difference between the demurrer standard and the Rule 12(b)(6) standard.[3] *See OpenGov, Inc. v. GTY*

---

[3] F45 contends that "federal courts more rigorously scrutinize pleadings to determine their sufficiency," but does not show how the slight difference in pleading standards would lead to a different result on this Motion. Reply at 3. Both standards take the allegations in the complaint as true, and ask whether the complaint states facts sufficient to constitute a cause of action. *See* CCP § 430.10(e); FRCP 12(b)(6). While federal courts add

*Technology Holdings, Inc.*, Case No. 18-cv-07198-JSC, 2019 WL 2010707 (N.D. Cal. May 7, 2019) (comparing demurrer standards as set forth by the California Supreme Court and the 12(b)(6) standard as set forth by the U.S. Supreme Court); *cf. Fairbank*, 212 F.3d at 531 (affirming an overruling where the district court "noted that the California and federal summary judgment standards are different and that the difference amounted to a cogent reason to reach the merits of [the] summary judgment motion"). F45's argument is simply that it believes that the State Court's ruling on the Demurrer was in error, and, if it was, this would be a "cogent reason" to depart from the prior order. See, e.g., Castner v. First National Bank of Anchorage, 278 F.2d 376, 380 (9th Cir. 1960) ("The second judge must conscientiously carry out his judicial function . . . . He is not doing this if he permits what he believes to be a prior erroneous ruling to control the case . . . . We think these are cogent reasons and exceptional circumstances which justify a departure from the rule of comity within the permissible limits of judicial discretion.") . . . . . . Motion at 18. Assuming that an erroneous ruling by the State Court qualifies as a "cogent" reason, because, as discussed below, the Court does not find that the State Court was erroneous, the Court will not depart from its ultimate conclusion.

The Court does not find that the State Court decided the core issue incorrectly—*i.e.*, that F45 failed to show that the language of the contract *does not* mean what DBVL says it means. In this Court's view, at least at this stage, the language of the Agreement *is* clear:[4] it states that F45 "shall procure that any shares of Common Stock issued to [DBVL] pursuant to this Agreement are admitted to trading on any relevant securities exchange *from the time of their issue* to [DBVL] and

---

an additional "plausibil[ity] standard" (*See Twombly*, 550 U.S. at 570), F45 has not shown that adding plausibility to the analysis should lead to a different result.

[4] It is true that if contract terms are facially ambiguous then it may be appropriate to consider extrinsic evidence, such as what is possible under federal securities law. Motion at 18-19. But it is inappropriate at this stage to consider any affirmative defense of excusal due to impossibility. *See U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) (noting that "[o]rdinarily, affirmative defenses . . . may not be raised on a motion to dismiss"). F45 clarified at the hearing that it was not setting forth impossibility as a defense, but rather to support its interpretation of the contract. But, F45 also conceded that it was not impossible to have started the registration process earlier, merely arguing that it "would not make sense" to do so. Therefore, what is and is not possible under applicable securities laws appears to be in dispute, and becomes extrinsic evidence that is improper for the Court to consider at this time.

shall be freely transferrable…*from the time of their issue*" (emphasis added). Compl., Exh. A at 3.6(f). DBVL's interpretation—that F45 was required to issue shares that were freely transferable—comes directly from the plain language of the Agreement, even if F45 disputes the meaning of "procure" in this context. Although F45 strenuously opposes DBVL's reading of this provision—arguing that it cannot mean what it says—F45 does not put forward any other plausible reading.[5] Even if this Court accepts that "procure" refers to a process that takes place over time,[6] at the very least "from the time of their issue" must mean that the process must *start* right away.[7] Otherwise "from the time of their issue" is meaningless. But as DBVL alleges, F45 didn't even *begin* the process right away. Specifically, DBVL alleges that the shares lost millions in value from January 15, 2022, when they were first issued, to September 23, 2022, when they finally became freely transferrable. Compl. ¶ 36.[8] DBVL also alleges that in this time period, F45 issued freely transferrable stock to other entities, *id*. ¶ 31, but as of May 2022, F45 had not even registered the shares yet, *id*. ¶ 32.[9]

Accordingly, the Court finds that DBVL has adequately pleaded its breach of contract claim for failure to issue First Vesting Date shares (First Cause of Action).[10] F45 acknowledges that DBVL's second and third causes of action are "wholly dependent" on its first breach of contract

---

[5] F45's assertion—that "from the time of their issue" modifies the term "procure" does not comport with the rules of grammar and is certainly no more plausbible that DBVL's reading.

[6] The Court notes that none of the other uses of "procure" that F45 points to even contain a time provision (with the possible exception of Serction 7(b)), so the use of procure in those contexts does not shed light on what "procure" means when it is associated with a specific time.

[7] The Court also finds that there is ambiguity in what this "process" actually entails that cannot be resolved at this stage. Under F45's view, it was sufficient that they begin considering how to register those shares, but for practical purposes this would essentially mean F45 could register the shares at any time, which does not at this stage appear to be a reasonable inteperation of the contractual obligation.

[8] F45 also contends that DBVL has not pleaded facts demonstrating causation of damages and injury, but the alleged loss of stock value due to untimely registration no doubt qualifies as damages directly caused by F45. Motion at 21.

[9] F45 appears to agree with this chronology. *See* RJN, Ex. 1 (May 23, 2022 letter from F45 to DBVL stating "the Company has been working in partnership with members of the [DBVL] team to determine the best method of registering [the shares].")

[10] Even if the Court agreed with the State Court that the contract is ambiguous, the result would be the same—F45 has failed to meet its burden on its Motion because DBVL's reading is at the very least reasonable.

claim. Reply at 9. Therefore, as the Court finds the first claim sufficiently pleaded, the Court also finds that DBVL has sufficiently pleaded facts supporting breach of contract for failure to issue Second Vesting Date shares (Second Cause of Action) and declaratory relief for the remaining cash payments provided for by the Agreement (Third Cause of Action).

### III. Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. F45's Request for Judicial Notice is GRANTED IN PART (ECF No. 17); and
2. F45's Motion to Dismiss is DENIED (ECF No. 16).

IT IS SO ORDERED.

Dated: September 15, 2023

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge